| IN THE MATTER OF THE SEARCH OF 301 CHEROKEE BOULEVARD APARTMENT 211 CHATTANOOGA, TENNESSEE | Case No. 1:17-MJ- 121 **Filed Under Seal** |
|---|---|

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

This Affiant, Adam Baldwin, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, states the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I, Adam Baldwin, am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since August 2014. In addition to my employment with ATF, I have over three years of law enforcement experience with the Pentagon Force Protection Agency (PFPA). During my tenure with PFPA, I served two years as a police officer in multiple capacities, to include patrol, surveillance detection, and as a law enforcement liaison to the Director of PFPA. I additionally served approximately one year as a special agent with PFPA, conducting complex criminal and protective intelligence investigations, as well as conducting domestic and international protective missions. I am a graduate of the Federal Law Enforcement Training Center (FLETC) Uniformed Police Training Program (UPTP), Criminal Investigator Training Program (CITP), and the ATF Special Agent Basic Training (SABT) Program. I have received specialized training with

respect to narcotics and firearms violations and have been involved in numerous investigations involving violent crimes and the seizure of firearms and controlled substances. I also have a Bachelor of Science in Criminal Justice from East Tennessee State University, and a Master of Science in Criminal Justice from The University of Tennessee at Chattanooga.

2. This affidavit is submitted in support of an application for a search and seizure warrant of the residence and premises located at the following location: 301 Cherokee Boulevard Apartment 211 Chattanooga, TN, the residence known by your Affiant to be associated with Martrel ARNOLD, AKA "Trikky Trel". The residence is located on the second floor of the apartment building. Your Affiant has obtained the information contained in this affidavit through observations, interviews with fellow law enforcement officers, and information provided by multiple ATF and CPD Confidential Informants (CIs) throughout the course of this investigation. Not every fact known to your Affiant regarding the case has been included in the affidavit. Your Affiant has only included information and facts needed for the Court to make a finding of probable cause.

3. Based upon your Affiant's training and experience and participation in investigations involving controlled substances, your Affiant knows that when controlled substances are illegally used, manufactured, and trafficked, other supporting items and materials are usually present in addition to the controlled substances themselves. These supporting items commonly associated with the use of and trafficking of controlled substances include, but are not limited to, drug paraphernalia, scales, and packaging materials suitable for particular

substance(s); records and notes (including computer and electronically stored) of controlled substance transactions; money (proceeds of or capital for controlled substance(s) transactions); firearms kept for protection; stolen property (often traded for controlled substances); electronic devices suitable for use in controlled substance transactions, recordings of such transactions, or electronic devices suitable for avoiding law enforcement.

4. It is also common for traffickers of these substances to use electronic communication devices such as cellular telephones, pagers, both numeric and two-way, and computers so that they can conduct their business at virtually any time without unnecessary delay. Your Affiant knows that these devices are usually found on or in very close proximity to these persons and that such electronic devices are capable of storing information such as phone numbers and/or coded messages that may lead to the identity of codefendants, coconspirators, and/or sources of supply. Cellular phones, phone records, device purchase agreements and other related documents related to the ownership are normally kept at their businesses, and/or places of operation. It is also common for them to keep their electronic communication devices and cellular telephones in close proximity to themselves, on their person, in their vehicles, or at their business or place of operation. Cellular telephones, in addition to being communication devices, are also storage devices for data. Data electronically stored inside cellular telephones include telephone numbers of associates, logs of the date and time that individual calls were made, voice and text messages from associates and photographs of the primary user, family members and associates, location information, internet browsing history, calendar entries, task lists, contact information, and other similar data. The data inside cellular telephones is

evidence of such sales activity, demonstrates true ownership and control of the telephones, which can be registered to another person, and can be effectively used to corroborate the statements of witnesses. With the advent of "smart phones", all of the documents and information discussed within this section can be held on a smart phone in electronic format as well.

5. Based upon training and experience in conducting investigations involving controlled substances, your Affiant also knows that drug dealers, while utilizing electronic communication devices to conduct their business, will often use "slang," or "code words" when referring to their business activities. These code words may include reference to, but are not limited to, money, narcotics, other co-conspirators, and certain locations. Drug dealers use these code words in an attempt to conceal their illegal activities from law enforcement in an effort to avoid detection. Your Affiant is also aware that specific slang and code words utilized by those trafficking in controlled substances may be influenced by various factors such as geographical area, cultural influences, and the type of controlled substance being trafficked.

6. In your Affiant's training and experience, users of and traffickers in controlled substances, when hiding or transporting controlled substances or cash, commonly conceal them in several separate "stashes," often in several rooms of a building, outbuilding, vehicles, and in public or common areas which can be kept under their observation. Narcotics traffickers will also often place assets in names other than their own to conceal their assets from law enforcement.

7. Your affiant is aware that narcotics traffickers sometimes utilize multiple "stash locations" in an attempt to keep large quantities of controlled substances separate. Based on your Affiant's training and experience, your Affiant knows this to be done so that law enforcement cannot seize all of the controlled substance at one time if law enforcement is alerted to the location of a single "stash location." This is also done in an attempt to secrete controlled substances from non- law enforcement personnel in an attempt minimize the potential of a robbery by individuals seeking to take possession of controlled substances during armed robberies, home invasions, or routine thefts.

8. It has also been your Affiant's training and experience that those who use or traffic in controlled substances, especially when law enforcement appears, will attempt to physically separate themselves from the controlled substances. They often do this by placing a controlled substance in a "neutral" location. They often employ intermediaries as couriers and drivers, to store drugs or conduct transactions. These intermediaries often include associates, but may also be extended to include women, juveniles, or older people. Traffickers will use these individuals to transport controlled substances or otherwise assist the operation. These "mules" (as they are sometimes called) hold or transport the controlled substances or cash, allowing the dealer to stay "clean." Traffickers will also often "hand off" incriminating evidence to another person if confronted by law enforcement. In sum, these methods are used to attempt to insulate traffickers from risk of detection and apprehension by law enforcement.

9. Based upon your Affiant's training and experience and the facts as set forth in this affidavit,

there is probable cause to believe that a violation of Title 21 USC § 841(a)(1) has been committed.

## PROBABLE CAUSE

10. Your Affiant is currently participating in an investigation involving illegal drug trafficking in the Eastern District of Tennessee. An investigation conducted by the ATF and the Chattanooga Police Department (CPD) has identified numerous individuals as operating in the Eastern District of Tennessee, and being responsible for the distribution of large quantities of powder cocaine throughout the Chattanooga, TN area. Throughout the course of the investigation, Martrel ARNOLD, AKA "Trikky Trel," (hereinafter referred to as ARNOLD) was identified as a major supplier of powder cocaine in the Chattanooga, TN area. ARNOLD has a previous federal felony conviction for narcotics trafficking, and currently has an active arrest warrant for violation of his federal probation. Due to information obtained throughout the investigation, ARNOLD was further identified as using multiple female associates to hide narcotics and money and to place assets (vehicles, rental properties, etc.) under their names. Two of the identified female associates of ARNOLD's were identified as Ashlei AMMONS (hereinafter referred to as AMMONS) and Elizabeth GLADDEN (hereinafter referred to as GLADDEN). GLADDEN also has a federal felony conviction for narcotics trafficking.

11. The investigation was initiated by the development of information given by multiple ATF and CPD Confidential Informants (CI's), as well as interviews with fellow law enforcement officers. The CI's have previously provided reliable information regarding

individuals selling narcotics throughout the Eastern District of Tennessee. The CI's have also provided information regarding criminal activity, which has been independently corroborated by other agents/officers as accurate. Accordingly, your Affiant submits that the CI's have proven reliable.

12. In addition to CI information and other law enforcement information, your Affiant has reviewed wireless records and conducted surveillance on ARNOLD and his associates. Your Affiant and other law enforcement officers assisting with the operations have identified vehicles associated with ARNOLD to be driven during various narcotics transactions. Specifically, during one of the controlled purchases from DARRELL ARMSTRONG, ARMSTRONG was observed meeting with an unidentified individual in a silver Dodge Ram, MD tag 2CL5255, immediately after a CI advised your Affiant that ARMSTRONG was going to meet his supplier to pick up powder cocaine. Database checks conducted on the Dodge Ram confirmed it to be registered to Enterprise Rental Cars. Surveillance conducted by your Affiant and other law enforcement officers had previously witnessed ARNOLD driving the silver Dodge Ram both prior to, as well as up to several weeks after the controlled purchase. The Dodge Ram was also witnessed by your Affiant to be parked at ARNOLD's known place of employment during his scheduled shift, as well as frequently parked at 260 Water Street Chattanooga, TN, one of ARNOLD's known residences. A review of Enterprise Rental Cars records further confirmed the Dodge Ram to be rented to GLADDEN during the time period of the aforementioned surveillance activities and controlled purchase.

13. During an additional controlled purchase of powder cocaine from ARMSTRONG, ARMSTRONG was witnessed meeting with an unidentified individual driving a 2007 Black Chevrolet Tahoe, TN tag W05-02P, immediately after a CI advised your Affiant that ARMSTRONG was going to meet his supplier to pick up powder cocaine. State database checks conducted on the Tahoe confirmed it to be registered to GLADDEN as well. Following the controlled purchase, the Tahoe was surveilled by law enforcement assisting with the operation traveling down 38th Street in Chattanooga, TN, in the direction of and in close proximity to 260 Water Street, one of ARNOLD's known residences. According to information provided by an ATF CI, ARNOLD is known to drive a mid-2000's model black Chevrolet Tahoe. According to the CI, he/she has witnessed ARNOLD driving the Tahoe on multiple occasions, to include as recently as April 2017. Surveillance conducted by your Affiant has also observed the aforementioned Tahoe frequently parked at GLADDEN's listed residence on her State of Tennessee Driver's License, 3307 East 43rd Street Chattanooga, TN.

14. In March 2017, a Confidential Source (CS) provided your Affiant with information that AMMONS, who the CS understood to be ARNOLD's girlfriend, had recently moved to a residence located at 827 Darryl Lane Chattanooga, TN. According to the CS, he/she knew ARNOLD to be a major supplier of powder cocaine in the Chattanooga, TN, area, and that ARNOLD frequently uses one of his female associates, primarily AMMONS, to store his cocaine and money. The CS continued that he was aware of ARNOLD's and AMMONS' activities due to a recent conversation the CS overheard during which AMMONS was bragging about storing money and cocaine in her residence for ARNOLD. According to the

CS, AMMONS, made detailed statements about previously storing large quantities of cocaine and money in her condominium near the riverfront in downtown Chattanooga. According to the CS, AMMONS also talked about hiding approximately $100,000 cash for ARNOLD and smuggling it out of the condominium during the execution of a narcotics search warrant at her residence in the summer of 2016. The CS continued that AMMONS stated that ARNOLD would bring bags ranging from small bags to duffle bags into her residence containing anywhere from two to four kilograms of cocaine at a time as well as large sums of money. According to the CS, AMMONS further stated that she was also allowing ARNOLD to do the same activity at her then current residence, located at 827 Darryl Lane Chattanooga, TN.

15. Following AMMONS' statements, the CS stated that he/she had consistently witnessed ARNOLD coming and going in rental vehicles to include late at night, as well as in AMMONS' vehicle, a newer model black Hyundai sedan, at various times throughout the day and night from 827 Darryl Lane. The CS stated that he/she has also witnessed ARNOLD occasionally carrying bags in and out of the house.

16. Subsequent information provided by CPD Narcotics Detective Michael Bolton corroborated the CS' information regarding AMMONS' previous address near the riverfront in Chattanooga, TN. According to Detective Bolton, a search warrant was executed in the summer of 2016 at AMMONS' residence at the time. During the search warrant, law enforcement recovered digital scales with cocaine residue, paperwork belonging to

ARNOLD, as well as a large sum of cash hidden in the residence. Both AMMONS and ARNOLD were subsequently charged with narcotics offenses in Hamilton County, TN.

17. Due to the information provided by the CS and Detective Bolton, your Affiant began conducting surveillance operations in the area of 827 Darryl Lane. During surveillance, your Affiant observed a black Cadillac sedan, SC Tag MMA-144, as well as a black Hyundai Sedan, TN Tag 169-5TC, parked in the driveway for the residence. Database checks conducted on the Hyundai confirmed the vehicle to be registered to AMMONS. Database checks conducted on the Cadillac confirmed it to be registered to Enterprise Rental Cars. Subsequent rental records provided by Enterprise confirmed the Cadillac to be rented to AMMONS. Your affiant had also witnessed ARNOLD driving the Cadillac prior to surveillance at 827 Darryl Lane, as well as observed it parked at 260 Water Street Chattanooga, TN.

18. Additional surveillance conducted in the area of 827 Darryl Lane revealed ARNOLD coming and going from the residence at various times, primarily late at night, as well as occasionally carrying bags in and out of the residence which was consistent with the information provided by the CS. Accordingly, your Affiant believes that the information provided by the CS has proven reliable.

19. During surveillance conducted on March 23, 2017, a moving company was observed moving furniture out of AMMONS residence, 827 Darryl Lane. On April 24, 2017, due to your Affiant's knowledge of an active federal arrest warrant for ARNOLD, your Affiant contacted the moving company in attempt to locate AMMONS' current residence in order to

assist in locating ARNOLD's current whereabouts. According to the moving company, AMMONS' furniture was moved to 301 Cherokee Boulevard Apartment 211 Chattanooga, TN, following the move from 827 Darryl Lane. According to the moving company, AMMONS stated that 301 Cherokee Boulevard Apartment 211 Chattanooga, TN was her new residence and was present at 301 Cherokee Boulevard Apartment 211 Chattanooga, TN when her belongings were delivered to the residence.

20. Your Affiant then conducted surveillance in the area of 301 Cherokee Boulevard Chattanooga, TN. While walking past Apartment 211, your Affiant and other ATF agents assisting with surveillance smelled a strong odor of unburnt, or "raw" marijuana emanating from Apartment 211. Upon further investigation, your Affiant was able to determine that the smell of marijuana was concentrated directly in front of Apartment 211. Your Affiant knows from training and experience that unburnt, or raw marijuana, has a different smell than burnt marijuana. Your Affiant also knows that a strong odor of raw marijuana, especially when emanating from behind a closed door or confined space, is indicative of a large resale amount of marijuana, not personal use.

21. In addition to surveillance conducted by your Affiant, the leasing office for 301 Cherokee Boulevard Chattanooga provided information that confirmed the residence to be rented to GLADDEN. Your Affiant additionally showed a photograph of GLADDEN to the property manager. The property manager positively identified GLADDEN as the current person listed on the lease for Apartment 211.

22. Information provided by Enterprise Rental Cars regarding AMMONS' rental records on April 24, 2017, confirmed that earlier on the same day, AMMONS returned two rental vehicles to an Enterprise location in Chattanooga, TN. According to the manager, one of the vehicles returned by AMMONS had a strong odor of marijuana. Following confirmation from the manager that the vehicle was still on the property and had not been rented to an additional party, ATF Special Agent (SA) Jay Barnett viewed the vehicle. While looking inside of the vehicle, SA Barnett smelled a strong odor of unburnt or raw marijuana emanating from the vehicle.

23. Due to the above-stated facts, between April 24, 2017 and April 25, 2017, your Affiant and other ATF agents conducted multiple surveillance operations at 301 Cherokee Boulevard. During surveillance, your affiant and other law enforcement officers continued to smell unburnt or raw marijuana emanating from Apartment 211. The smell of the unburnt or raw marijuana was smelled emanating from Apartment 211 as of late afternoon on April 25, 2017.

24. WHEREFORE, based upon the facts detailed above, together with your Affiant's training and experience in drug trafficking investigations, your Affiant believes and submits there is probable cause to believe that the premises, including the residence and curtilage described herein will contain evidence of drug trafficking, particularly of marijuana in violation of Title 21, United States Code, Section 841. These fruits, evidence and instrumentalities of crimes against the United States of America are described with particularity in Attachment B.

## REQUEST FOR SEALING

25. Your Affiant further requests that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

_____
Adam Baldwin/ATF Special Agent

Sworn to and subscribed before me this 26 day of April 2017.

_____
Susan K. Lee
United States Magistrate Judge